**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL L. WARREN and** | : | **CIVIL ACTION NO. 1:04-CV-2798** |
| **OLANDIS WARREN,** | : | |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TOWNSHIP OF DERRY, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

This is a civil rights action filed by Samuel Warren ("Samuel") and Olandis

Warren ("Olandis"), against the Township of Derry and several members of its

police force.  Presently before the court is a motion for summary judgment, filed by

defendants Township of Derry ("Township"), Chief William D. Smith ("Smith"),

Sergeant Patrick O'Rourke ("O'Rourke"), and Officer Kenneth M. Shank

("Shank").  (Docs. 38, 41.)  For the reasons that follow, defendants' motion will be

granted in part and denied in part.

**I.    <u>Statement of Facts</u>**[1]

On December 29, 2002, plaintiffs, who are both African-American males,

entered Fox's Food Market between 8:00 a.m. and 9:00 a.m.  (Doc. 1 ¶¶ 4-5; Doc. 39

¶ 10; Doc. 48 ¶ 10.)  Plaintiffs allege that they intended to purchase various food

items, as well as baby diapers, from the market.  (Doc. 39 ¶ 10; Doc. 48 ¶ 10.)

---

[1] In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to plaintiffs, as
the nonmoving parties.  <u>See</u> <u>infra</u> Part II.

Plaintiffs sensed they were being watched by the store manager, Alan Rehm

("Rehm"), so they decided to leave their groceries in the cart and exit the store

without purchasing any items.[2]  (Doc. 39 ¶¶ 11-12; Doc. 48 ¶¶ 11-12.)  Plaintiffs allege

that Rehm followed them into the store lobby, where Samuel offered to allow Rehm

to search him for evidence of theft.  (Doc. 40, Ex. A at 72.)  Samuel also alleges that

he removed his coat and lifted his shirt to demonstrate that he was not concealing

any items on his person.  (Doc. 40, Ex. A at 72.)

Rehm, believing a crime was in progress, directed an employee to contact the

police.  (Doc. 39 ¶ 15; Doc. 48 ¶ 15.)  Rehm exited the store to get a description of

plaintiffs' vehicle and their direction of travel.  He relayed that information, along

with a description of the plaintiffs, to a police dispatcher.[3]  (Doc. 39 ¶ 16; Doc. 48

¶ 16.)  A radio transmission was sent to all on-duty Township police officers,

advising them that a retail theft had occurred.  (Doc. 39 ¶ 17; Doc. 48 ¶ 17.)  A later

radio transmission advised that "the suspects had fled from the store and were last

---

[2] The parties dispute what was contained in the abandoned shopping cart. Defendants allege that the cart contained fifteen items, including two packages of diapers, twelve meat products and one jar of spaghetti sauce, and that the retail value of the items was $212.83.  (Doc. 39 ¶¶ 27, 31; Doc. 40, Ex. H at 37.)  Plaintiffs allege that the grocery cart contained only three to four steaks and that the total value was not "much more than $50."  (Doc. 48 ¶¶ 27, 31.)  After plaintiffs' arrest, police determined that plaintiffs had $104.00 plus some change and no credit cards on their person at the time of the incident.  (Doc. 39 ¶¶ 28-29; Doc. 48 ¶¶ 28-29.)

[3] Rehm testified that he also told the police dispatcher that no merchandise had been removed from the store.  (Doc. 40, Ex. G at 20.)  The parties dispute when defendants became aware of this fact.

2

seen driving southbound on Cherry Drive in a blue Honda-type vehicle." (Doc. 39 ¶ 18; Doc. 48 ¶ 18.)

After leaving Fox's Food Market, plaintiffs went to a nearby convenience store. (Doc. 39 ¶¶ 19-20; Doc. 48 ¶¶ 19-20.) Officer Shank observed plaintiffs' blue coupe, which matched the description of the target vehicle, parked in front of the convenience store. Shank saw a black male exit the passenger side door of the vehicle and enter the store. He then saw a second black male exit the driver's side door of the vehicle. Believing that this individual matched the description of one of the suspects in the retail theft, Shank approached the blue coupe and asked the individual for identification. (Doc. 39 ¶¶ 19-21, 23; Doc. 48 ¶¶ 19-21,23.) The individual identified himself as Samuel L. Warren. (Id.) Samuel alleges that, despite his lack of resistance, Shank and another officer pulled him out of his car and threw him to the ground. (Doc. 40, Ex. A at 32, 48.) He states that one of the officers slammed a knee into his back while handcuffing him. (Doc. 40, Ex. A at 32.) He alleges that he asked the purpose of the confrontation and was told to "shut the hell up and sit on the curb." (Doc. 40, Ex. A at 33.)

Officer Shank then entered the convenience store and approached the second black male, who identified himself as Olandis Warren. (Doc. 39 ¶ 24; Doc. 48 ¶ 24.) Samuel alleges that, when Olandis exited the convenience store, the officers grabbed Olandis, forced him to the police car, slammed his head against the hood, and handcuffed him. (Doc. 40, Ex. A at 36-37.) Olandis alleges that he was frisked

and placed in the police car, from which he observed the officers "picking [Samuel] up by his arms." (Doc. 40, Ex. B at 67-68.)

The officers also conducted a search of Samuel's car, which Samuel alleges damaged the upholstery and the seats. (Doc. 40, Ex. A at 38; Doc. 40, Ex. F at 17.) Shortly thereafter, O'Rourke arrived at the convenience store with Rehm, who identified plaintiffs as the suspects. (Doc. 39 ¶ 25; Doc. 48 ¶ 25.) Police officers then learned that plaintiffs had outstanding warrants from Lancaster County.[4] (Doc. 40, Ex. B at 71; Doc. 40, Ex. E at 14; Doc. 40, Ex. F at 34.) At that point, plaintiffs were arrested and were transported to the police station to await their preliminary arraignment. (Doc. 39 ¶ 26; Doc. 48 ¶ 26.)

Samuel alleges that while he was detained at the police station, he requested a cup of water from O'Rourke. O'Rourke allegedly retrieved the cup of water and threw it in Samuel's face. (Doc. 40, Ex. A at 19.) Samuel also alleges that in response to his request to make a telephone call, O'Rourke said, "Your black ass will get a phone call when you get to Dauphin County Prison." (Doc. 40, Ex. A at 19.) O'Rourke denies these allegations, stating that the use of racial slurs "flies in the face of the mission statement" of the Township Police Department. (Doc. 40, Ex. E at 63.)

---

[4] Ultimately, Shank determined that the outstanding warrant against Samuel was flawed because the Lancaster County Police Department "could not find the paperwork to support [the warrant]." (Doc. 40, Ex. F at 56-57.)

At their arraignment, plaintiffs pled not guilty to retail theft and criminal conspiracy. (Doc. 39 ¶ 37; Doc. 48 ¶ 37.) Samuel was released, but Olandis was incarcerated at Dauphin County Prison on his outstanding warrant.[5] (Doc. 39 ¶¶ 32, 37; Doc. 48 ¶¶ 32, 37.) The retail theft and criminal conspiracy charges were ultimately dismissed by District Justice Dominick A. Pelino. (Doc. 39 ¶ 38; Doc. 48 ¶ 38.)

On December 23, 2004, plaintiffs initiated the instant action against the Township and its police officers, as well as Fox's Food Market and store manager Alan Rehm.[6] (Doc. 1.) Plaintiffs allege that defendants: (1) violated their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, (2) conspired to deprive them of their civil rights in violation of 42 U.S.C. § 1985, (3) intentionally discriminated against them on the basis of race in violation of 42 U.S.C. § 1981, and (4) subjected them to ethnic intimidation in contravention of 42 PA. CONS. STAT. ANN. § 8309. (Doc. 1 ¶¶ 64, 70, 74, 78.) Plaintiffs also aver that defendants violated several provisions of the Pennsylvania Constitution and committed various torts, including false arrest, false imprisonment, assault and battery, intentional infliction of emotional distress ("IIED"), and malicious prosecution. (Doc. 1 ¶¶ 81-84, 86.)

---

[5] Olandis acknowledges that he had an outstanding warrant and was "on the run" at the time of his arrest. (Doc. 39 ¶ 33; Doc. 48 ¶ 33.)

[6] The parties subsequently stipulated to the dismissal of defendants Fox's Food Market and Alan Rehm from the above-captioned action pursuant to Rule 41 of the Federal Rules of Civil Procedure. (See Doc. 56.)

Defendants now move for summary judgment on each of plaintiffs' claims.  The motion has been fully briefed and is ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

III.   **Discussion**

A.   **Section 1983 Claims**[7]

Section 1983 of Title 42 of the United States Code offers private citizens a

means of redress for violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To establish a civil rights claim, the plaintiff must

show a "deprivation" of a constitutional or statutory right by a person "acting under

---

[7]  As a threshold matter, plaintiffs have failed to allege that Smith was personally involved in any of the constitutional violations alleged. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . ."). Even if plaintiffs intended to base their claims against Smith upon supervisory liability, plaintiffs' claims fail.  To establish a claim of supervisory liability, a plaintiff must prove that:  (1) the supervisor failed to employ a "specific supervisory practice or procedure," (2) the existing practice or procedure "created an unreasonable risk of the ultimate injury," (3) "the supervisor was aware that this unreasonable risk existed," (4) "the supervisor was indifferent to the risk," and (5) the subordinate's constitutional violation "resulted from the supervisor's failure to employ that supervisory practice or procedure."  Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001).  In the instant case, plaintiffs have failed to identify a specific supervisory practice that Smith neglected to employ.  Therefore, the court will grant summary judgment in favor of Smith on each of plaintiffs' § 1983 claims.

color of state law."[8] Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d

Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery.

Certain officials, including police officers and other state actors performing

"discretionary functions," are shielded from suit if their conduct did not violate a

"clearly established statutory or constitutional right[] of which a reasonable person

would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533

U.S. 194, 200-01 (2001).  This doctrine, known as "qualified immunity," provides not

only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S.

224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  In Saucier, the

Supreme Court explained the analytical process for determining when to apply the

privilege of qualified immunity:

> A court required to rule upon the qualified immunity issue must
> consider . . . this threshold question:  Taken in the light most favorable
> to the party asserting the injury, do the facts alleged show the
> [defendant's] conduct violated a constitutional right?  This must be the
> initial inquiry . . . .  If no constitutional right would have been violated
> were the allegations established, there is no necessity for further
> inquiries concerning qualified immunity.  On the other hand, if a
> violation could be made out on a favorable view of the parties'
> submissions, the next, sequential step is to ask whether the right was
> clearly established.

Saucier, 533 U.S. at 201.  Thus, the qualified immunity analysis requires a two-step

inquiry.

---

[8] Defendants apparently do not dispute that, during the alleged incidents,
the Township police officers were "acting under color of state law."

> First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right. If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was "clearly established." If the court concludes that the defendant's conduct did violate a clearly established constitutional or statutory right, then it must deny the defendant the protection afforded by qualified immunity.

Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006); cf. Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005) (discussing whether the constitutional violation is a separate inquiry or part of the qualified immunity analysis); Kaucher v. County of Bucks, 455 F.3d 418, 423 n.2 (3d Cir. 2006).

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

Proceeding under the above framework, the court will consider each of plaintiffs' § 1983 claims to determine, first, whether plaintiffs have offered *prima facie* evidence of their claims and, second, whether defendants enjoy qualified immunity on those claims for which plaintiffs have presented sufficient evidence.

1.    *Prima Facie* **Evidence of Plaintiffs' Claims**

Plaintiffs have raised the following § 1983 claims: excessive force, unlawful search and seizure, unlawful arrest, and malicious prosecution.[9]  Plaintiffs also argue that the Township is liable under § 1983 because it fostered a policy or custom of discrimination.  The court will address each of these issues *seriatim*.

a.    **Excessive Force**

Every citizen has a Fourth Amendment right to be free from excessive force during lawful arrests.  See Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004).  To avoid running afoul of the Fourth Amendment, an officer may exercise only a "reasonable" degree of force in effectuating an arrest.  Id.  In determining whether an officer's conduct was reasonable, a court must review all of the circumstances surrounding the arrest, including:  (1) the severity of the crime, (2) the immediate threat that the suspect posed to the officers' safety, (3) whether the suspect was actively resisting the arrest, and (4) the number of suspects with whom the officers had to contend at one time.  Gravely v. Speranza, No. 06-1592, 2007 WL 655290, at *2 (3d Cir. Mar. 5, 2007); see also Saucier, 533 U.S. at 205.  Generally, the issue of reasonableness is a question of fact reserved for the jury; however, summary judgment may be entered if the court "resolves all factual disputes in favor of the

---

[9]  Plaintiffs also raise due process and equal protection violations under § 1983. (Doc. 1 ¶¶ 65-66.)  Defendants acknowledge the existence of these claims but have proffered no arguments to support their position that judgment should be entered in their favor.  (See Doc. 41 at 5.)  Accordingly, the court will deny defendants' motion for summary judgment with respect to these claims without further discussion.

plaintiff and concludes that the use of force was objectively reasonable under the circumstances." <u>Gravely</u>, 2007 WL 655290, at *2.

In the action *sub judice*, plaintiffs allege that Shank and other officers[10] pulled Samuel from his vehicle, threw him to the ground, and kneed him in the back.  Plaintiffs further claim that the officers grabbed Olandis, forced him to the police car, and slammed his head against the hood.  (<u>See</u> Doc. 40, Ex. A. at 32-37. While "[n]ot every push or shove . . . is constitutionally unreasonable," <u>Sharrar v. Felsing</u>, 128 F.3d 810, 821 (3d Cir. 1997) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)), there is sufficient record evidence to suggest that the force used was excessive.  The record is devoid of evidence that plaintiffs posed a threat to officer safety or resisted arrest.  <u>See</u> <u>Gravely</u>, 2007 WL 655290, at *2.  Nor were plaintiffs suspected of a violent or serious crime.  <u>Id.</u>  Accordingly, in the context of the procedural posture of the case, <u>see</u> <u>supra</u> Part II, the court finds that plaintiffs have presented sufficient evidence to establish a *prima facie* claim of excessive force, and defendants' motion for summary judgment will be denied as to this claim.

---

[10]  An issue of fact remains as to whether O'Rourke was among the "other officers" to which plaintiffs refer.  O'Rourke testified that his involvement was limited to transporting Rehm to the scene and conducting an inventory of plaintiffs' possessions.  (Doc. 40, Ex. E at 51.)  However, Samuel testified that O'Rourke's involvement was more extensive and that O'Rourke was present at the scene during at least a portion of the incident.  (Doc. 40, Ex. A at 80.)

### b.   **Unlawful Search and Seizure**

Unlawful search and seizure claims require proof of an unconstitutional invasion of a plaintiff's "reasonable expectation of privacy" or a deprivation of his or her interest in property. See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992); Rakas v. Illinois, 439 U.S. 128, 133-35 (1978) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)). In the action *sub judice*, plaintiffs allege that: (1) they were unlawfully seized prior to their arrest, and (2) their vehicle was unlawfully searched.

The court will turn first to the issue of unlawful seizure. The court finds that plaintiffs were seized when they were handcuffed prior to their arrest. See Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005) (stating that an individual is seized when, in view of the totality of the circumstances, "a reasonable person would have believed that he was not free to leave"). To effect this type of seizure without running afoul of the Fourth Amendment, the police must possess "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006). In the action *sub judice*, defendants allege that they had reasonable suspicion to detain plaintiffs because plaintiffs fit the description of two retail theft suspects provided by a police dispatch. In fact, plaintiffs matched every detail of the description, which indicated that two African-American males were "last seen driving southbound on Cherry Drive in a blue Honda-type vehicle." (See Doc. 41 at 16; Doc. 39 ¶¶ 17-18; Doc. 48 ¶¶ 17-18.) That "every detail provided in a description

12

matched the details observed by the officers" can lead to a finding of reasonable suspicion.  United States v. Brown, 448 F.3d 239, 247 (3d Cir. 2006).  However, to establish reasonable suspicion, a police dispatch must meet the Fourth Amendment's "demand for specificity."  Id.  The court finds that the police dispatch in the instant case was sufficiently specific to satisfy the requirements of the Fourth Amendment because it contained a description of the vehicle, its direction of travel, and its occupants.[11]  See United States v. Nelson, 284 F.3d 472, 481 n.5 (3d Cir. 2002) (finding reasonable suspicion when suspects matched police dispatch description of "car, plates, occupants and direction of travel").  Accordingly, plaintiffs' pre-arrest

---

[11]  The Third Circuit has approved the use of demographic information in assessing the specificity of a police dispatch.  In United States v. Brown, the Third Circuit held that a radio description identifying the suspects as African-American males and describing their direction of travel was insufficient to establish reasonable suspicion.  448 F.3d at 247-48.  The Third Circuit's decision in Brown was based, in large part, upon the fact that the alleged events took place in an area of Philadelphia with an African-American population of over 43%.  Id. at 248 n.8.  In contrast, the seizure in the instant case took place in Derry Township, which has an African-American population of less than 2%.  See UNITED STATES CENSUS BUREAU, PROFILE OF GENERAL DEMOGRAPHIC CHARACTERISTICS OF DERRY TOWNSHIP, DAUPHIN COUNTY, PENNSYLVANIA (2000), http://censtats.census.gov/cgi-bin/pct/pctProfile.pl.  Although this demographic factor, standing alone, is clearly insufficient to establish reasonable suspicion, the court finds that, when considered in combination with the additional details set forth in the dispatch (e.g. number of occupants, color and type of vehicle, direction of travel and proximity), the information provided in the dispatch is consonant with the dictates of the Fourth Amendment.

detention was lawful, and defendants' motion for summary judgment will be granted with respect to plaintiffs' claim of unlawful seizure.[12]

The court turns next to the issue of the search of plaintiffs' vehicle. Defendants concede that the search was conducted without plaintiffs' consent and without a search warrant.  (See Doc. 40, Ex. E at 28.)  Absent consent or a warrant, officers may search an automobile only if "probable cause exists to believe [the automobile] contains contraband."  Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).  Reasonable suspicion can ripen into probable cause if the officers are able to gather additional incriminating information during a suspect's pre-arrest detention.  United States v. Goode, Crim. Act. No. 06-CR-0066-01, 2006 WL 3025885, at *3 (E.D. Pa. 2006).

Based upon the summary judgment record, the court finds that a reasonable jury could conclude that defendants did not gather sufficient additional information during plaintiffs' pre-arrest detention to justify a search of plaintiffs' vehicle. Although Rehm's identification of plaintiffs could have provided the requisite additional information, Shank testified that this identification occurred *after*

---

[12] In the alternative, the court finds that defendants are entitled to qualified immunity on plaintiffs' pre-arrest detention claim.  Law enforcement officials who "reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity."  Sharrar, 128 F.3d at 827 (citing Hunter, 502 U.S. at 535).  This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Sharrar, 128 F.3d at 826.  Given the evidence available to defendants at the time of plaintiffs' pre-arrest detention, defendants reasonably concluded that reasonable suspicion existed, which entitles them to qualified immunity.

plaintiffs' vehicle was searched.  (Doc. 40, Ex. F at 17.)  Additionally, an issue of fact

remains as to when defendants learned that plaintiffs had not removed any

merchandise from Fox's Food Market.  Rehm testified that he informed the police

dispatcher that nothing had been removed.  (See Doc. 40, Ex. G at 20.)  Hence, a

reasonable jury could conclude that defendants knew that no merchandise had

been taken prior to executing the search of plaintiffs' vehicle.  If defendants'

possessed such knowledge at the time of the search, they would have had no reason

to believe that the vehicle contained contraband.  See Labron, 518 U.S. at 940.

Accordingly, the court finds that plaintiffs have presented sufficient evidence to

establish a *prima facie* claim that their car was unlawfully searched, and

defendants' motion for summary judgment will be denied as to this claim.[13]

### c.    Unlawful Arrest

Claims of unlawful arrest require the plaintiff to show that he or she was

arrested without probable cause.  Groman v. Twp. of Manalapan, 47 F.3d 628, 634-

35 (3d Cir. 1995); see also Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir.

2000).  Probable cause to arrest requires "proof of facts and circumstances that

would convince a reasonable, honest" officer that the person arrested has

committed a crime.  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993); see

United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  Thus, the issue is not

whether an individual actually committed the crimes for which he or she was

---

[13] An issue of fact remains as to whether O'Rourke was personally involved
in the search of plaintiffs' car.  See supra note 10.

arrested, but whether the police had probable cause to believe that the individual committed those crimes at the time of his or her arrest. <u>Groman</u>, 47 F.3d at 634; <u>see also</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released.").

To determine if defendants possessed probable cause to arrest plaintiffs in the instant case, the court must examine only that evidence that was available to defendants at the time of plaintiffs' arrest. At the time of plaintiffs' arrest, defendants knew that: (1) plaintiffs matched the police dispatch description of the retail theft suspects, (2) Rehm had identified plaintiffs as the suspects, and (3) there was an outstanding arrest warrant for Olandis.[14]  A radio transmission may be sufficient to establish probable cause when combined with other evidence closely linking a suspect to the scene of a reported crime. <u>Edwards v. City of Phila.</u>, 860 F.2d 568, 571 n.2 (3d Cir. 1988). In the instant case, such evidence came in the form of Rehm's positive identification of plaintiffs as the suspects. <u>See</u> <u>Lynn v. Christner</u>, 184 F. App'x 180, 182, 183 n.2 (3d Cir. 2006) (stating that "victim's positive identification" of suspect constituted "strong inculpatory evidence" the could contribute to a finding of probable cause); <u>Mitchell v. Obenski</u>, 134 F. App'x 548, 551

---

[14] Defendants suggest that the court should include in its probable cause calculus the discrepancy between the dollar value of the abandoned goods and the amount of money plaintiffs possessed. (Doc. 41 at 19-20.) However, defendants concede that they did not ascertain this information until *after* the plaintiffs were arrested, so it could not have formed the basis for plaintiffs' arrest. (Doc. 39 ¶¶ 28-29; Doc. 48 ¶¶ 28-29.)

(3d Cir. 2005) ("When a police officer has received a reliable identification by a victim . . ., the police have probable cause to arrest.").  The valid outstanding warrant against Olandis also contributed to the officer's determination that probable cause existed.  <u>Holmes v. McGuigan</u>, 184 F. App'x 149, 151 (3d Cir. 2006) (holding that police officer's awareness of an outstanding warrant for the suspect's arrest can contribute to a finding of probable cause, provided that the outstanding warrant is valid).  The court finds that a reasonable, honest officer armed with the foregoing information would have concluded that plaintiffs had committed the crime of retail theft and would have been justified in procuring their arrest.[15]  Accordingly, defendants' motion for summary judgment with respect to this claim will be granted.[16]

---

[15]  Even if defendants were aware at the time of plaintiffs' arrest that plaintiffs had not removed any merchandise from Fox's Food Market, their conclusion that probable cause existed would have been reasonable.  Actual removal of merchandise is not an essential element of the crime of retail theft. Pennsylvania's retail theft statute requires only the intentional concealment of store property: "Any person intentionally concealing unpurchased property of any store . . . on the premises . . . of such store, shall be prima facie presumed to" be guilty of retail theft.  18 PA. CONS. STAT. ANN. § 3929.

[16]  In the alternative, the court finds that defendants are entitled to qualified immunity on plaintiffs' unlawful arrest claim.  <u>See</u> <u>supra</u> note 12.  Given the evidence available to defendants at the time of plaintiffs' arrest, defendants' conclusion that probable cause to arrest existed was reasonable.  Accordingly, defendants are entitled to qualified immunity.

### d.   <u>Malicious Prosecution</u>[17]

A claim of malicious prosecution requires a plaintiff to prove that:  (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003); <u>see also</u> <u>Marable v. West Pottsgrove Twp.</u>, 176 F. App'x 275, 280-81 (3d Cir. 2006).  The court's conclusion that defendants possessed probable cause to effect plaintiffs' arrest forecloses plaintiffs' malicious prosecution claim as a matter of law.  <u>Amato v. Pa. Office of Attorney Gen.</u>, 183 F. App'x 260, 262 n.1 (3d Cir. 2006) ("[I]f probable cause is established, a malicious prosecution claim fails as a matter of law.")  Accordingly, defendants' motion to dismiss the malicious prosecution claim will be granted.

---

[17] Plaintiffs' complaint also sets forth a state law claim for malicious prosecution.  (<u>See</u> Doc. 1 ¶ 86; Doc. 47 at 25-26.)  Under Pennsylvania law, a claim of malicious prosecution requires a plaintiff to prove four of the five elements required by a federal malicious prosecution claim.  <u>See</u> <u>Donahue v. Gavin</u>, 280 F.3d 371, 379 (3d Cir. 2002) (excluding the deprivation of liberty element from a malicious prosecution claim under Pennsylvania law); <u>see also</u> <u>Corrigan v. Central Tax Bureau of Pa., Inc.</u>, 828 A.2d 502, 505 (Pa. Cmwlth. Ct. 2003).  Accordingly, plaintiffs' federal and state claims of malicious prosecution merge for purposes of analysis.

### e.   **Municipal Liability**[18]

Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Id. (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)*).*  A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

In the instant case, plaintiffs claim that the Township maintained a policy or custom "to use the strong arm of the law to keep Blacks and maybe other minorities out of [the] Township."  (Doc. 47 at 15.)  Plaintiffs base their contention solely upon the facts and circumstances of the instant case and concede the possibility that plaintiffs' treatment was "an isolated incident."  (Id.)  The court finds no evidence to suggest that plaintiffs' treatment resulted from a policy or custom of discrimination. In fact, plaintiffs admit that they are unaware of any incidents in which the

---

[18]  Plaintiffs' claim is otherwise known as a Monell claim because the doctrine was established by the United States Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658 (1978).

Township subjected other individuals to "overt intimidation or racism." (Doc. 40, Ex. A at 19-20.) Accordingly, defendants' motion for summary judgment will be granted with respect to this claim.[19]

### 2.   **Clearly Established Rights**

Based on the court's findings that plaintiffs have established *prima facie* claims of excessive force and unlawful search against Shank and O'Rourke, the court must determine whether these defendants are entitled to qualified immunity. To determine whether a public official is entitled to qualified immunity, the court must ascertain "whether a reasonable public official would know that his or her specific conduct violated clearly established rights." Grant, 98 F.3d at 121 (citing Anderson v. Creighton, 483 U.S. 635, 636-37 (1987)). This requires an examination of whether, taking the evidence in the light most favorable to the plaintiff, each defendant should have known that his or her actions contravened statutory or constitutional guarantees. Gruenke, 225 F.3d at 299-300. "This is not to say that an official action is protected by qualified immunity unless the very action in question

---

[19] Even if plaintiffs had premised their claim of municipal liability on a theory that the Township had failed to adequately train its officers, plaintiffs' claim would fail for lack of evidence of causation. When a municipal policy or custom "does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Berg, 219 F.3d at 276 (internal quotations omitted). Failure to train municipal employees "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Id. In the instant case, there is no evidence of record to suggest that the Township's officers engaged in a pattern of constitutional violations. Accordingly, the court finds plaintiffs' municipal liability claim to be without merit.

has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Creighton, 483 U.S. at 640 (citation omitted).

The court finds that defendants are not entitled to immunity with respect to the excessive force claim. Viewing the facts in a light most favorable to the non-moving party, the court must state the obvious: throwing a non-resisting suspect to the ground and slamming his head against the hood of a police car clearly exceeds constitutional boundaries of reasonableness. Assuming these facts to be true, defendants should have recognized that their conduct rose above the floor of a civil rights violation. See Graham, 490 U.S. at 395; Russoli, 126 F. Supp. 2d at 858.

With respect to the search of plaintiffs' vehicle, the relevant inquiry is whether it was objectively reasonable for defendants to believe that probable cause existed for the search. If, as plaintiffs contend, defendants knew at the time of the search that no merchandise had been removed from Fox's Food Market, it would have been unreasonable for them to believe that the vehicle contained contraband or that they had probable cause for the search. See Labron, 518 U.S. at 940. Accordingly, the court finds that defendants are not entitled to immunity with respect to the search of plaintiffs' vehicle.

### B.  Section 1985 Claim

Plaintiffs allege that the acts and conduct of O'Rourke, Shank, and Rehm "constituted a conspiracy to deprive plaintiffs of their civil rights in violation of 42 U.S.C. 1985." (Doc. 1 ¶ 74.) Section 1985(3) provides a cause of action against a

person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  To establish a *prima facie* case under § 1985(3), a plaintiff must prove that:  (1) defendants engaged in a conspiracy, (2) the conspiracy's purpose was to deprive either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws, (3) defendants committed an act in furtherance of the conspiracy, and (4) defendants' actions resulted in an injury to the plaintiff's person or property or a deprivation of the plaintiff's rights or privileges as a United States citizen.  Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971); Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001); Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).  "Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim."  D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992).

In the instant case, the court finds no evidence of record from which any type of conspiratorial agreement between Shank, O'Rourke, and Rehm can be inferred. Although plaintiffs contend that O'Rourke made a racially insensitive remark to Samuel and splashed water on his face, the court finds no evidence of record that would attribute similar statements, beliefs, or actions to Shank or Rehm.  See Adams v. Teamsters Local 115, No. 03-3680, 2007 WL 142540, at *4 (3d Cir. 2007) ("A civil conspiracy is a combination of *two or more* persons acting in concert to commit

22

an unlawful act.") (emphasis added).  Accordingly, defendants' motion for summary

judgment on the § 1985 conspiracy claim will be granted.

### C.   Section 1981 Claims

Section 1981 of Title 42 of the United States Code was enacted to "abolish all

the remaining badges and vestiges of the slavery system."  Mahone v. Waddle, 564

F.2d 1018, 1030 (3d Cir. 1977).  It states, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

In the instant case, plaintiffs assert a § 1981 claim of racial discrimination

against Shank and O'Rourke, both of whom are state actors.  There remains some

question as to whether § 1981 creates an independent right of action against state

actors.  In Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 732-33 (1989), the United

States Supreme Court held that § 1983 was the exclusive vehicle for asserting § 1981

violations against state actors.  Thereafter, Congress passed the Civil Rights Act of

1991 which "amended § 1981 to provide that 'rights protected by this section are

protected against impairment by nongovernmental discrimination and impairment

*under color of State law*.'"  Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001)

(quoting 42 U.S.C. § 1981(c)) (emphasis added).  This amendment sparked a division

among federal courts as to whether "§ 1981(c) abrogates Jett by creating an implied

independent cause of action" against state actors.  <u>Compare</u> <u>Oden v. Okitbbeha</u> <u>County, Miss.</u>, 246 F.3d 458, 464 (5th Cir. 2001) (stating that allegations of § 1981 violations must be brought via § 1983), <u>and</u> <u>Butts v. County of Volusia</u>, 222 F.3d 891, 894 (11th Cir. 2000) (same), <u>and</u> <u>Dennis v. County of Fairfax</u>, 55 F.3d 151 (4th Cir. 1995) (same), <u>with</u> <u>Fed'n of African American Contractors v. City of Oakland</u>, 96 F.3d 1204 (9th Cir. 1996) (stating that amendments to § 1981 created direct cause of action, implicitly overruling <u>Jett</u>), <u>and</u> <u>Riley v. Del. River & Bay Auth.</u>, 457 F. Supp. 2d 505, 512 (D. Del. 2006) (same), <u>and</u> <u>Watkins v. Pa. Bd. of Prob. & Parole</u>, No. 02CV2881, 2002 WL 32182088, at *4-7 (E.D. Pa. Nov. 25, 2002) (same).  The court elects to follow the rationale of its sister court in the Eastern District of Pennsylvania, which concluded, after conducting an exhaustive review of the legislative history behind § 1981, that the section creates an implied direct cause of action against state actors.  <u>See</u> <u>Watkins</u>, 2002 WL 32182088, at *4-7.

Having concluded that plaintiffs may assert an independent cause of action against Shank and O'Rourke, the court must address the merits of plaintiffs' § 1981 claim.  To survive summary judgment on a § 1981 claim, a plaintiff must present specific facts showing that:  (1) he or she is a "member of a racial minority," (2) he or she was subjected to an "act of discrimination," and (3) the defendant acted with an "intent to discriminate."  <u>Koger v. Kaplan, Inc.</u>, 169 F. App'x 682, 684 (3d Cir. 2006).  Because "those with racist intentions do not always verbalize their pernicious motives," a plaintiff may prove discriminatory intent based on "the

totality of the circumstances." <u>Whichard v. Cheltenham Twp.</u>, Civ. A. No. 95-CV-3969, 1996 WL 502281, at *8 (E.D. Pa. Aug. 29, 1996).

In support of their § 1981 claim, plaintiffs allege that considering the circumstances of their arrest in combination with O'Rourke's racially insensitive statement establishes that defendants acted with discriminatory intent.  In light of such evidence, the court finds that a reasonable jury could determine that O'Rourke acted with the intent to discriminate.  <u>See</u> <u>id.</u> at *8 (permitting § 1981 claim to survive summary judgment where an arresting officer yelled a racial epithet at the plaintiff).  However, the court finds no evidence of record that would ascribe a similar intent to Shank.  Accordingly, the court will deny summary judgment with respect to the § 1981 claim against O'Rourke, but will grant summary judgment with respect to the § 1981 claim against Shank.

### D.   <u>State Statutory Claim</u>

Plaintiffs aver that they are entitled to redress pursuant to Section 8309 of Title 42 of the Pennsylvania Consolidated Statutes, which establishes a cause of action for personal injuries incurred as a result of ethnic intimidation.  42 PA. CONS. STAT. ANN. § 8309.  A person commits the offense of ethnic intimidation if, "with malicious intention toward the race . . . of another individual," he commits any number of underlying criminal offenses.  18 PA. CONS. STAT. ANN. § 2710(a).  In the action *sub judice*, plaintiffs allege that defendants committed the underlying criminal offense of harassment.  (Doc. 47 at 20.)  Section 2709 of Title 18 of the Pennsylvania Consolidated Statutes provides, in pertinent part, as follows:

> A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;
>
> (2) follows the other person in or about a public place or places;
>
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose; . . .

18 PA. CONS. STAT. ANN. § 2709. To establish a valid claim of harassment under Pennsylvania law, a plaintiff must prove that: (1) the defendant engaged in a "course of conduct," not just a single, isolated incident, Commonwealth v. Zullinger, 676 A.2d 687, 689 (Pa. Super. Ct. 1996); see also Commonwealth v. Schnabel, 344 A.2d 896, 898 (Pa. Super. Ct. 1975), and (2) the defendant's actions "had no legitimate purpose," Commonwealth v. Urrutia, 653 A.2d 706, 709 n.5 (Pa. Super. Ct. 1995).

In the instant case, plaintiffs have failed to prove that defendants' actions amounted to a "course of conduct," rather than a single, isolated incident. Zullinger, 676 A.2d at 689. Furthermore, plaintiffs have failed to establish that defendants' actions were not motivated by legitimate law enforcement objectives. See Urrutia, 653 A.2d at 709 n.5. Absent proof that defendants committed the underlying criminal offense of harassment, plaintiffs' claim of ethnic intimation under § 8309 cannot survive. Accordingly, the court will grant defendants' motion for summary judgment with respect to this claim.

E.   **State Constitutional Claims**

Plaintiffs allege that defendants violated numerous rights secured by Article I of the Pennsylvania Constitution.[20]  Whether a direct cause of action under the various provisions of the Pennsylvania Constitution exists remains unsettled.  In a recent *en banc* decision, the Commonwealth Court of Pennsylvania concluded that "the judicial creation of a new cause of action for monetary damages for the [defendant's] alleged violation of Article I, Section 8 of the Pennsylvania Constitution [was] not required."  Jones v. City of Phila., 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006).  Although its holding was limited to the facts of the case, the Jones decision illustrates the Pennsylvania court's reluctance to create "a new monetary remedy, where a remedy already exists, without benefit of legislative action."  Id.; see also id. at 1208 (noting that "neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution").

This court has previously declined to exercise jurisdiction over state constitutional claims.  See Millar v. Windor Twp., No. 1:04-CV-2529, 2005 WL 1513120, at * 3-4 (M.D. Pa. June 24, 2005).  As in Millar, the court believes that deference to the state appellate courts on this issue is appropriate and, therefore, will decline to exercise jurisdiction over plaintiffs' state constitutional claims.  See 28 U.S.C. § 1367(c)(1) (stating that a court may decline jurisdiction if "the claim

---

[20] Specifically, plaintiffs cite to Sections 1, 8, 11, and 26 of Article I of the Pennsylvania Constitution.  (See Doc. 1 at 19-20.)

raises a novel or complex issue of State law"); <u>Mulgrew v. Fumo</u>, No. 03-CV-5039, 2004 WL 1699368, at *2 (E.D. Pa. July 29, 2004) ("Due to this unsettled issue of law, as to whether such a direct right of action exists [for money damages for violations of the state constitution], we believe a state court is better equipped to determine the causes of action that may be derived from the Pennsylvania Constitution."); <u>see also</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d 478, 487 (3d Cir. 1998) (affirming court's refusal to extend jurisdiction over state law issue that would require the court to interpret state's constitution, as deferral of matter was "out of respect for the right of a state court system to construe that state's own constitution") (citing <u>Doe v. Sundquist</u>, 106 F.3d 702, 708 (6th Cir. 1997)). Accordingly, plaintiffs' state constitutional claims will be dismissed without prejudice.

### F.   <u>State Tort Claims</u>

Defendants contend that they are immune from plaintiffs' state tort claims pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. §§ 8541-8550. If, however, defendants actions resulted from "willful misconduct," they are not shielded by governmental immunity. 42 PA. CONS. STAT. ANN. § 8550. For purposes of immunity, "willful misconduct is synonymous with intentional tort." <u>Cameron v. Johnson</u>, Civ. A. No. 05-5758, 2006 WL 1878329, at *3 (E.D. Pa. July 6, 2006) (citing <u>Kuzel v. Krause</u>, 658 A.2d 856, 859 (Pa. Cmwlth. Ct. 1995)). Plaintiffs' remaining state tort claims are all intentional torts. Accordingly,

defendants are not immune from liability for these torts, and the court must

consider the merits of plaintiffs' claims.

### 1.    Assault and Battery & IIED

Defendants have failed to proffer arguments to support their position that

judgment should be entered in their favor with respect to plaintiffs' claims of

assault and battery and IIED.  (See Doc. 41 at 29 (stating that defendants choose to

"defer a further discussion to see if Plaintiffs are serious about their state law

claims").  Accordingly, the court will deny defendants' motion for summary

judgment with respect to these claims without further discussion.

### 2.    False Imprisonment and False Arrest

Under Pennsylvania law, a defendant is liable for false imprisonment if:

(1) he or she intended to confine a person within fixed boundaries, (2) the act

directly or indirectly resulted in such confinement, (3) the person confined is

"conscious of the confinement or is harmed by it," and (4) the confinement is

unlawful.  Joyner v. Sch. Dist. of Phila., 313 F. Supp. 2d 495, 502 (E.D. Pa. 2004); see

also Gagliardi v. Lynn, 285 A.2d 109, 111 n.2 (Pa. 1971) (quoting RESTATEMENT

(SECOND) OF TORTS § 35 (1965)).  A confinement is unlawful "if there was no

probable cause."  Joyner, 313 F. Supp. 2d at 502.  Similarly, "false arrest" is an

arrest made without probable cause . . . or by a person without authority to do so.

McGriff v. Vidovich, 699 A.2d 797, 798-99 (Pa. Commw. Ct. 1997); see also Renk v.

City of Pittsburgh, 641 A.2d 289, 295 n.2 (Pa. 1994) (Montemuro, J., dissenting);

DeBellis v. Kulp, 166 F. Supp. 2d 255, 279-80 (E.D. Pa. 2001).  Given the court's

29

conclusion that defendants possessed probable cause to effect plaintiffs' arrest,

plaintiffs' claim of false imprisonment and false arrest fail as a matter of law, and

the court will grant defendants' motion for summary judgment with respect to these

claims.

###### G.   **Unnamed Defendants**

The complaint lists numerous unnamed defendants:  (1) John/Jane Doe

Police Officers #1 - 5, (2) John/Jane Doe Community Service Officers #1 - 5,

(3) John Doe Fox Employees #1 - 3, and (4) ABC Corporation.[21]  In their motion for

summary judgment, defendants seek the dismissal of all claims against these

unnamed defendants because plaintiffs have never identified nor served them.  (See

Doc. 41 at 25-26.)  Plaintiffs did not oppose this portion of defendants' motion for

summary judgment.  (See Doc. 47.)[22]  See D'Angio v. Borough of Nescopeck, 34 F.

Supp. 2d 256, 265 (M.D. Pa. 1999) (providing that the non-moving party waived any

argument when he failed to address it in a responsive brief); see also L.R. 7.6.  In

addition, fact discovery ended on March 30, 2006 (see Doc. 33) and plaintiffs have

---

[21] Plaintiffs describe the ABC Corporation as "an unknown entity whose name Plaintiffs does not yet know but which may be responsible for the acts and omissions committed by the private actors / employees set forth in this Action." (Doc. 1 ¶ 15.)

[22] The court notes that plaintiffs included the following question in their brief in opposition, which they answered in the negative:  "Whether the Doe defendants must be dismissed from this litigation due to plaintiffs' failure to substitute and serve the real parties in interest?"  (Doc. 47 at 6.)  However, plaintiffs' discussion includes no reference to this question, nor does it present any legal argument supporting plaintiffs' suggested answer to the question.

never attempted to amend the complaint to name the real parties in interest.[23]

Accordingly, the court will dismiss all claims against the unnamed defendants.

## IV. <u>Conclusion</u>

For the foregoing reasons, the court will grant defendants' motion for

summary judgment with respect to plaintiffs' claims of: (1) unlawful seizure,

unlawful arrest, and malicious prosecution pursuant to 42 U.S.C. § 1983,

(2) conspiracy pursuant to 42 U.S.C. § 1985, (3) race discrimination pursuant to 42

U.S.C. § 1981 against Shank, (4) ethnic intimidation pursuant to 42 PA. C.S.A. §

8309, (5) state constitutional violations, and (6) false imprisonment, false arrest, and

malicious prosecution pursuant to Pennsylvania law. The court will also grant

defendants' motion for summary judgment with respect to all claims against

Township and Smith and against all unnamed defendants. Defendants' motion for

summary judgment will otherwise be denied. An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        March 20, 2007

---

[23] Even if plaintiffs now sought leave to amend the complaint, such leave
would be denied because of undue delay and prejudice to defendants. <u>See</u> <u>Hill v.
City of Scranton</u>, 411 F.3d 118, 134 (3d Cir. 2005) ("While Rule 15(a) [of the Federal
Rules of Civil Procedure] provides that leave to amend should be 'freely given,' a
district court has discretion to deny a request to amend if it is apparent from the
record that (1) the moving party has demonstrated undue delay, bad faith or
dilatory motives, (2) the amendment would be futile, or (3) the amendment would
prejudice the other party.").

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL L. WARREN and | : | CIVIL ACTION NO. 1:04-CV-2798 |
| OLANDIS WARREN, | : | |
| | : | |
| Plaintiffs | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| TOWNSHIP OF DERRY, et al., | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 20th day of March, 2007, upon consideration of defendants'

motion for summary judgment (Doc. 38), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.   The motion for summary judgment (Doc. 38) is GRANTED with
     respect to the following claims: (a) unlawful seizure, unlawful arrest,
     and malicious prosecution pursuant to 42 U.S.C. § 1983, (b) conspiracy
     pursuant to 42 U.S.C. § 1985, (c) race discrimination pursuant to 42
     U.S.C. § 1981 against defendant Kenneth M. Shank, (d) ethnic
     intimidation pursuant to 42 PA. C.S.A. § 8309, (e) false imprisonment,
     false arrest, and malicious prosecution, and (f) all remaining claims
     against defendants Township of Derry and William D. Smith.

2.   The motion for summary judgment (Doc. 38) is otherwise DENIED.

3.   Plaintiffs' state constitutional claims are DISMISSED without
     prejudice. See 28 U.S.C. § 1367(c)(1).

4.   Plaintiffs' claims against John/Jane Doe Police Officers #1 - 5,
     John/Jane Doe Community Service Officers #1 - 5, John Doe Fox
     Employees #1 - 3, and the ABC Corporation are DISMISSED.

5.      The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

6.      A revised pretrial and trial schedule shall issue by future order of court.


                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge